IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| D.C. MASON BUILDERS, INC., *Plaintiff*, v. BANCROFT CONSTRUCTION CO., *et al.*, *Defendants*. | Civil Action No. ELH-15-00046 |

**MEMORANDUM**

This case arises from a contract dispute between a general contractor, defendant Bancroft Construction Company ("Bancroft"), and a sub-subcontractor, plaintiff D.C. Mason Builders, Inc. ("DCMB"). ECF 1 (Complaint); *see also* ECF 9 (Amended Complaint).[1]

In January 2014, Bancroft entered into a contract ("General Contract") with the Queen Anne's County Board of Education (the "Board"), to serve as the general contractor for a construction project at Stevensville Middle School in Stevensville, Maryland (the "Project"). ECF 9 at ¶¶ 5, 10. Bancroft then entered into a subcontract with JLN Construction Services, LLC ("JLN") for masonry work on the Project (the "JLN Subcontract"). ECF 9 at ¶ 12. In April 2014, JLN, as subcontractor, entered into a contract with a sub-subcontractor, DCMB ("DCMB Subcontract") to perform some of the work embodied in the JLN Subcontract. *Id.* at ¶ 13.[2]

---

[1] In the Amended Complaint, DCMB added Liberty Mutual Insurance Co. as a defendant, and also added one additional count. *See* ECF 9-1 (redlined version).

[2] The parties refer to the contract between the Board and Bancroft as the "Prime Contract." *See, e.g.*, ECF 9 ¶ 10 (First Amended Complaint); ECF 13-1 at 2 (Bancroft's Memo., stating "Bancroft was awarded the prime contract. . . ."). However, the DCMB Subcontract

Bancroft, as principal, and Liberty Mutual Insurance Co. ("Liberty"), as surety, issued a Payment Bond to assure payment of subcontractors and materialmen who performed work on the Project. *Id.* at ¶ 11.

In October 2014, JLN informed DCMB that DCMB was being "'suspended'" from work on the Project, "without any cause or reason provided." *Id*. ¶ 35.  "JLN later informed DCMB that the … suspension of its performance of work at the Project was initiated at the direction of Bancroft." *Id*. ¶ 36.  In November 2014, JLN informed DCMB that it did "not anticipate permitting DCMB to return to the Project to complete its work," *id*. ¶ 37, resulting "in a de facto termination of the [DCMB Subcontract]." *Id.* ¶ 38.  This suit followed.

The Amended Complaint contains five counts.  ECF 9.  Count I is an action against Bancroft for payment on the Bond.  *Id.* at ¶ 46-53.  Count II alleges a violation of the Civil Rights Act of 1966, as codified at 42 U.S.C. § 1981, granting equal rights under the law to make and enforce contracts.  ECF 1 at ¶¶ 54-64.  In Count III, DCMB alleges that Bancroft tortiously interfered with plaintiff's contractual relationship, namely, the Subcontract between JLN and DCMB.  *Id.* at ¶¶ 65-70.  In Count IV, plaintiff alleges that Bancroft conspired with others to discriminate against DCMB and to interfere with its Subcontract.  *Id.* at ¶¶ 71-74.  Count V is an action against Liberty for payment on the Bond.  *Id.* at ¶¶ 75-89.  Plaintiff demands both compensatory and punitive damages, plus interest, attorney's fees, and costs.  *Id.* at ¶¶ 53, 64, 70, 74, 89.

Bancroft has filed a motion to dismiss Counts III and IV (ECF 13, "Motion"), which is supported by a memorandum of law (ECF 13-1, "Memo").  It argues that Counts III and IV fail

---

refers to the contract between JLN and Bancroft as the "Prime Contract."  In order to avoid confusion, I have avoided defining any of the contracts as the "Prime Contract."

to state a claim and must be dismissed, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF 13-1 at 4, 9.  Bancroft also submitted a copy of the DCMB Subcontract as an exhibit to its Motion.  ECF 13-2 (Ex. A).  However, it did not submit copies of the JLN Subcontract or the General Contract.  DCMB opposes the Motion, ECF 14 ("Opposition"), and defendants have replied.  ECF 16 ("Reply").

The Motion has been fully briefed, and no hearing is necessary to resolve it.  *See* Local Rule 105.6.  For the reasons set forth below, I will deny the Motion in part and grant it in part.

## I.  Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the adequacy of a complaint.  To survive a Rule 12(b)(6) motion, a complaint must satisfy the pleading standard articulated in Fed. R. Civ. P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

To defeat a motion under Rule 12(b)(6), a complaint "must plead facts sufficient to show that [the] claim has substantive plausibility."  *Johnson v. City of Shelby, Miss*., ____ U.S. ____, 135 S. Ct. 346, 347 (2014); *see Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); *Twombly*, 550 U.S. at 570; *see also Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012); *Simmons v.*

*United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (citation omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, ____ U.S. ____, 132 S. Ct. 402 (2011).  The complaint must contain sufficient factual detail to "nudge[ ] [the plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 680.

Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief . . . .'"  *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted).  But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events.  *See Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  Nor must it accept legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010).

In regard to a Rule 12(b)(6) motion, courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quotation marks omitted).

However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman*, 494 F.3d at 464 (quoting *Richmond*, 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir.), *cert. denied*, 543 U.S. 979 (2004). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in

original).

## II.  Choice of Law

Plaintiff asserts that this Court has subject matter jurisdiction based on diversity, pursuant to 28 U.S.C. § 1332.  And, the Court would have subject matter jurisdiction over DCMB's federa claims under 28 U.S.C. § 1331.  Pursuant to 28 U.S.C. § 1367, the Court would have supplemental jurisdiction as to DCMB's state law claims.  The Amended Complaint does not specify the particular state law on which plaintiff relies.  But, in their briefings on the Motion, both parties rely almost exclusively upon Maryland law.

"When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011).  *See also Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); *Baker v. Antwerpen Motorcars, Ltd.*, 807 F. Supp. 2d 386, 389 n. 13 (D. Md. 2011).  Maryland is, of course, the forum state.

As to contract claims, Maryland applies the law of the state in which the contract was formed (*"lex loci contractus"*), unless the parties to the contract agreed to be bound by the law of another state. *See, e.g., Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161, 58 A.3d 497, 507 (2012), *aff'd*, 437 Md. 372, 86 A.3d 1245 (2014).  Under Maryland's choice-of-law principles for tort claims, Maryland applies the doctrine of *lex loci delecti*, *i.e.*, the law of the jurisdiction where the alleged wrong or harm occurred.  *Lewis v. Waletzky*, 422 Md. 647, 657, 31 A.3d 123, 129 (2011); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 620, 925 A.2d 636, 648

(2007); *Kortobi v. Kass*, 182 Md. App. 424, 443, 957 A.2d 1128, 1139 (2008), *aff'd*, 410 Md. 168, 978 A.2d 247 (2009).   *See*, *e.g.*, *Proctor v. Washington Metropolitan Area Transit Auth.,* 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010).

In this case, as to the tort claim, the alleged harm appears to have occurred in Maryland. Accordingly, I will apply Maryland law.

### III.   Discussion

According to DCMB, Bancroft "discriminated against DCMB solely on account of the African descent and origin of its owner."  ECF 9 ¶ 57.  DCMB asserts:  "In furtherance of its racially discriminatory conduct …, Bancroft instructed JLN, absent any justifiable cause or reason, to deny DCMB the opportunity to perform its work …, and ultimately, to terminate the [Subcontract]." *Id.* ¶ 58.

Bancroft argues that DCMB's tortious interference claim fails as a matter of law because "a claim for tortious interference with contractual relationship will not lie where the defendant is a party to the 'economic relationship' underlying the contract at issue." ECF 13-1 at 4 (citing, *e.g.*, *Mid-Atlantic Soaring Ass'n, Inc. v. F.A.A.*, RBD-05-02110, 2006 WL 1892412, at *8 (D. Md. June 29, 2006)).  Thus, according to Bancroft, because the DCMB Subcontract incorporates the JLN Subcontract as part of its controlling terms and conditions, Bancroft is a party to the "economic relationship" underlying the DCMB Subcontract and cannot be held liable for tortious interference with the DCMB Subcontract.  ECF 13-1 at 6, 7.  Bancroft also argues that Count IV fails to state a claim because, once the Court dismisses Count III, there is no underlying tort to support the civil conspiracy claim, as required by Maryland law.  *Id.* at 9.   Alternatively, Bancroft urges the Court to dismiss Count IV because the Amended Complaint "fails to provide

any basis for an actual agreement or conspiracy between Bancroft and anyone else." ECF 13-1 at 11.

DCMB does not expressly dispute that Bancroft was a party to the "economic relationship" underlying the Subcontract.  Instead, it argues that the point is irrelevant, because Maryland courts have never held that being a party to an underlying "economic relationship," rather than a party to the *contract*, forecloses liability for tortious interference with *contractual* relations.  ECF 14 at 5-11.

The tort of intentional interference with contractual or business relations is "well-established in Maryland."  *Macklin v. Robert Logan Assocs.,* 334 Md. 287, 296, 639 A.2d 112, 116 (1994).  Broadly stated, it provides that "one not privileged to do so who purposely induces or causes a third person not to perform a contract or enter into or continue a business relation with another is liable for the harm caused thereby."  *United Rental Equipment Co. v. Potts & Callahan Contracting Co.*, 231 Md. 552, 560, 191 A.2d 570, 574 (1963).  The Maryland Court of Appeals reiterated the elements of the tort in *Blondell v. Littlepage*, 413 Md. 96, 125, 991 A.2d 80, 97 (2010) (quoting *Kaser v. Financial Protection Marketing, Inc.*, 376 Md. 621, 628-29, 831 A.2d 49, 53 (2003)), as follows:

> A claim for intentional interference with contractual or business relations requires the following elements: "(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting."

The tort has "two general manifestations." *Macklin*, 334 Md. at 297, 639 A.2d at 117.  The first manifestation is often described as "'inducing the breach of an existing contract,'" and the second, "more broadly, constitutes maliciously or wrongfully interfering with economic

relationships in the absence of a breach of contract." *Blondell*, 413 Md. at 125, 991 A.2d at 97 (citation omitted).  In other words, under Maryland law, one may claim tortious interference with a contract, or, in the absence of a contract or breach of contract, one may claim tortious interference with business or economic relations.[3]

DCMB is correct that Bancroft, in its Memo, wholly conflates the two different forms of this tort.  *See* Memo, ECF 13-1 at 4-7; Opposition, ECF 14 at 5-11.

Maryland courts have "'never permitted recovery for the tort of intentional interference with a contract when both the defendant and the plaintiff were parties to the contract.'" *K & K Mgmt., Inc. v. Lee*, 316 Md. 137, 156, 557 A.2d 965, 974 (1989( (quoting *Wilmington Trust Co. v. Clark*, 289 Md. 313, 329, 424 A.2d 744, 754 (1981)).  Logically, an injured party's legal remedy in such a situation is an action for breach of contract, not an action for tortious interference with contract.  *K & K Mgmt., Inc.*, 316 Md. at 155-66, 557 A.2d at 974.  Thus, "there is no cause of action for interference with a contract when suit is brought against a party to the contract." *Wilmington Trust Co.*, 289 Md. at 329, 424 A.2d at 754.

But, the same is not true in cases where the plaintiff alleges tortious interference with contract and the defendant is a party to the underlying economic relationship but not to the

---

[3] As Bancroft correctly argues, where a contract exists but is terminable at will, Maryland law treats an action for tortious interference with that contract as an action for tortious interference with business or economic relations.  *See*, *e.g.*, *Macklin*, 334 Md. at 304, 639 A.2d at 120.  "Where the contract is one terminable at will by the party who refuses performance, there is a broader right to interfere, … because competition in that case may, indeed, prove legitimate justification for the inducement."  *Id*. (citation omitted).  In its Memo, Bancroft asserts that the DCMB Subcontract is terminable at will.  ECF 13-1 at 7.  Bancroft cites three provisions of the DCMB Subcontract in support of its argument.  *Id.* (citing Ex. A (ECF 13-2) ¶¶ 7.2.2, 7.2.3, 7.2.4).  But, it does not explain why it believes those provisions support its contention.  *Id.*  In my view, they do not show that the DCMB Subcontract was terminable at will, at least not by the party that allegedly refused performance, *i.e.*, JLN.  *See* ECF 13-2 at 7.

contract at issue. Rather, the opposite is true. Because the injured party could *not* bring a breach of contract claim against the defendant, the tort creates a claim for liability based on the defendant's inducement of a third party's breach. *See*, *e.g.*, *Blondell*, 413 Md. at 125, 991 A.2d at 97 (quoting *Kaser*, 376 Md. at 630-31, 831 A.2d at 54, including *Kaser*'s discussion of "'the seminal English case of *Lumley v. Gye* [1853] 2 El. & Bl. 216'") (alteration in *Kaser*).

In such cases, the third party's liability does not depend on the economic relationship between the parties, *per se*. It depends upon the third party's intent and the nature of the acts that induced the breach, *i.e.* whether the acts were wrongful, or whether, to the contrary, they were somehow privileged or justified. *See Blondell*, 413 Md. at 125, 991 A.2d at 97; *United Rental Equipment Co*, 231 Md. at 560, 191 A.2d at 574 (1963). The economic relationship between the parties is, of course, relevant to the question of whether the third party's acts were wrongful or justified. *See*, *e.g.*, RESTATEMENT (SECOND) OF TORTS § 767 ("Factors in Determining Whether Interference is Improper").

Indeed, as Bancroft implicitly acknowledges in its Reply, Bancroft's argument to dismiss Count III is tantamount to an affirmative defense that its actions were justified; it is not an argument that plaintiff has failed to state a claim. *See* Reply, ECF 16 at 2 (titling subheading to argument: "As a matter of Maryland law, Bancroft need not be a signatory to Plaintiff's sub-subcontract in order *to assert a defense* to a tortious interference claim based on its position as a party to the overall economic relationship") (emphasis added).[4]

---

[4] To illustrate, Bancroft may be responsible to the Board for any claims of defective workmanship by any subcontractor. In construction cases, courts have been reluctant to extend direct liability between property owners and subcontractors who are not in privity of contract. *Council of Co-Owners Atlantis Condo., Inc. v. Whiting-Turner Contracting Co.*, 308 Md. 18, 27, 517 A.2d 336, 341 (1986) (citing *Prosser and Keeton on the Law of Torts* § 93, at 667-68 (5th

In *Macklin*, 334 Md. at 302, 639 A.2d at 119 (citations omitted), the Maryland Court of Appeals stated:

> Simply because a person induces another to exercise an existing right to terminate a contract, even if that person's intent with regard to one of the parties to the contract is tortious, does not make it actionable. That is, his or her conduct is not thereby rendered improper or wrongful as a matter of law. No matter with what intention a person may have acted, his or her conduct is not improper or wrongful if he or she had the right to cause the termination.

*See also Travelers Indem. Co. v. Merling*, 326 Md. 329, 341, 343, 605 A.2d 83, 89, 90 (1992) (granting summary judgment for defendant insurance agency on interference with contract claim where interference was justified because Maryland statute *required* agency to renew insurance policy with plaintiff's client even after the agency terminated plaintiff); *Sharrow v. State Farm Mutual*, 306 Md. 754, 511 A.2d 492 (1986) ("[E]ven though a third party may for his own benefit intentionally induce one party to terminate a contract with another, this alone will not render him liable in an action for tortious interference if he had a right to cause the breach since, in such circumstances, the conduct would not be wrongful or improper."); *United Rental Equipment Co*, 231 Md. at 560, 191 A.2d at 574 (1963) (quoting RESTATEMENT (FIRST) OF TORTS § 773 as defining when a third party may be "privileged" to induce a breach of contract).

As indicated earlier, a motion asserting failure to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," *Edwards v. City of Goldsboro*, 178 F.3d at 243 (quotation marks omitted), unless such a defense can be resolved on the basis of the facts alleged in the complaint. *See Goodman v. Praxair, Inc.*, 494 F.3d at 464. "This principle only applies, however, if all facts necessary to the affirmative

---

ed. 1984)); *see also Pulte Home Corp. v. Parex, Inc.*, 174 Md. App. 681, 735-36, 923 A.2d 971, 1002 (2007), *aff'd*, 403 Md. 367, 942 A.2d 722 (2008).

defense 'clearly appear[ ] *on the face of the complaint*,'" *id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (alteration and emphasis in *Goodman*), or in documents that are proper subjects of consideration under Rule 12(b)(6), such as a document incorporated into the Complaint, or a document that by its "'very existence, *and not the mere information it contains,* gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in *Chesapeake*); *see also U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).

In this case, the facts necessary to resolve Bancroft's defense are not apparent on the face of the Complaint. It may be that, as Bancroft asserts in its Memo, DCMB "was terminated for cause," ECF 13-1 at 1, and that Bancroft's actions were justified because it ultimately could have been held responsible for poor workmanship. *See*, *e.g.*, *PPM America, Inc. v. Marriott Corp.*, 853 F. Supp. 860, 879 (D. Md. 1994) (granting summary judgment for defendants on interference with contract claim where defendants induced third party's breach but were "attempting to protect their own economic interests" and their actions, refusals to deal, "were not otherwise unlawful"). But, at this stage in the litigation, I must accept as true DCMB's factual allegations to the contrary. *See*, *e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citation omitted); *see Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied*, ––– U.S. ––––, 132 S. Ct. 402 (2011).

Moreover, the merits of Bancroft's defense are not apparent from the DCMB Subcontract itself, which Bancroft submitted as an exhibit, *see* ECF 13-2, and which is integral to and incorporated by DCMB's Amended Complaint. *See*, *e.g.*, ECF 9 ¶ 13. The DCMB Subcontract

does incorporate the JLN Subcontract in some respects. *See*, *e.g.*, ECF 13-2 at 1. But, the DCMB Subcontract itself does not clearly give Bancroft an unconditional right to interfere. *See generally* ECF 13-2. Nor, as stated, has either side submitted copies of the JLN Subcontract or the General Contract, where a right to interfere may also be found. *See*, *e.g.*, *Painter's Mill Grille, LLC v. Brown*, RDB-11-01607, 2012 WL 576640, at *8 (D. Md. Feb. 21, 2012) (dismissing claim for tortious interference with contract where, "pursuant to the Lease Agreement, consent of the [defendant] Landlord … was required before the [plaintiff] Tenant … could contract to assign the Lease to another party"), *aff'd*, 716 F.3d 342 (4th Cir. 2013).

Accordingly, I am persuaded that plaintiff is entitled to an opportunity to develop the factual record before the Court addresses the issues raised in the Memo with respect to Count III. I will therefore deny the Motion with respect to Count III.

However, I will grant the Motion with respect to Count IV. Although, as just discussed, DCMB has sufficiently alleged facts supporting a claim for tortious interference with contract, DCMB has not plausibly alleged that Bancroft conspired to induce the breach. Bancroft argues that DCMB "offers only an illusory claim that Bancroft 'conspired with others.' (First Am. Comp. ¶¶ 72, 73)." ECF 13-1 at 11. DCMB responds, ECF 14 at 16:

> The Complaint further provides that "JNL later informed DCMB that the October 16, 2014 suspension of its performance of work at the Project was initiated at the direction of Bancroft." Complaint at ¶ 36. As such, Count IV, incorporating by reference paragraphs 1-70 of the Complaint, directly avers a conspiracy between Bancroft and JLN to wrongfully interfere with DCMB's contract.

"Civil conspiracy is 'a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an unlawful act not in itself illegal, with the further requirement that the act or means employed

must result in damages to the plaintiff.'" *Shenker v. Laureate Educ., Inc.*, 411 Md. 317, 351-52, 983 A.2d 408, 428 (2009) (citation omitted). Although "'the agreement to commit the act is not actionable on its own,'" *id.* at 352, 983 A.2d at 428 (citation omitted), there must nonetheless be some "agreement or understanding." *Id*. "A clear agreement to conspire is necessary because the '[i]ndependent acts of two wrongdoers do not make a conspiracy.'" *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 611 (D. Md. 2014) (quoting *Murdaugh Volkswagen, Inc. v. First Nat. Bank of South Carolina*, 639 F.2d 1073, 1076 (4th Cir. 1981).

There is nothing in the Amended Complaint that plausibly shows Bancroft conspired with JLN to induce the breach of contract.[5] And, there is not even a suggestion that Bancroft conspired with any other entity or person. Bancroft is correct that DCMB must offer more factual support to successfully "'nudge'" its claims "'across the line from conceivable to plausible.'" *Wright v. N. Carolina*, — F.3d —, No. 14-1329, 2015 WL 3396799, at *13 (4th Cir. May 27, 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Indeed, in light of the paucity of allegations on this point, and the similarity of remedies available for this claim and the other four counts alleged, this "appear[s] to be a textbook example of overpleading." *Viar-Robinson v. Dudley Beauty Salon*, PWG-12-01794, 2013 WL 6388646, at *8 (D. Md. Dec. 5, 2013). Accordingly, I will grant the Motion with respect to Count IV, and will dismiss Count IV.

---

[5] Indeed, I question whether such a conspiracy is even possible, given that JLN, as a party to the Subcontract, could not possibly be held liable for the underlying tort alleged, *i.e.* tortious interference with contract. *See Shenker*, 411 Md. at 352, 983 A.2d at 429 (holding that a "defendant may not be adjudged liable for civil conspiracy unless that defendant was legally capable of committing the underlying tort alleged"). Therefore, JLN could not be a co-conspirator in the unlawful acts.

- 15 -

If DCMB can supplement its factual allegations to show plausibly that Bancroft conspired to commit a tortious act, DCMB may move to amend its Amended Complaint to reallege this count.  Any such motion shall be due within seventeen days from the date of docketing of the Order accompanying this Memorandum.

**Conclusion**

For the foregoing reasons, I will deny in part and grant in part the Motion.  A separate Order follows, consistent with this Memorandum.

Date:  June 30, 2015              /s/
                                  Ellen Lipton Hollander
                                  United States District Judge